UNITED STATED DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

**UNITED STATES OF AMERICA,**

Plaintiff,

CASE NO.: 00-6109-CR-DIMITROULEAS

VS.

**JONAS ORDUNO,**

Defendant.

______________________________/

'00 SEP -5 PM 2:20

**DEFENDANT'S OBJECTION TO THE PRE-SENTENCE INVESTIGATION REPORT AND MOTION FOR DOWNWARD DEPARTURE**

The Defendant, **JONAS ORDUNO,** by and through the undersigned Counsel files this Objection to the Pre-Sentence Investigation Report (PSI) and respectfully moves for a Downward Departure from the otherwise applicable guideline offense level, and in support thereof, the Defendant states:

**OBJECTION TO PRE-SENTENCE INVESTIGATION REPORT**

**CRIMINAL HISTORY COMPUTATION**

**MR. ORDUNO** objects to the probation officer's criminal history computation. The probation officer has assessed four (4) points pursuant to § 2K 2.1 (b) (5), two (2) points pursuant to § 3C1.1, and deleted, and or did not give any reduction (three [3] level) for acceptance of responsibility; thereby placing the Defendant in a category III, the Defendant expected to be at level seventeen [17] (Base Level of twenty [20]).





In paragraph eighteen (18), the probation officer assessed four (4) points for possession or transferring a firearm ... with knowledge, intent or reason to believe that it would be used or possessed in connection with another felony offense.

The Defendant would submit to this Court that the operative facts as attached show that the Defendant was entrapped into the factual bases, upon which the probation officer has stated. In summary, the Confidential Informant, also known as MDO#5143 went to Defendant's grocery store on March 9, on two (2) different occasions wearing a body wire. The Confidential Informant engaged in collateral conversation and toward the end of the statement (see page fourteen [14] of the Tape #IE transcript), asked the Defendant for a gun which he knew the Defendant kept at **JONAS GROCERY STORE** for the employees protection. Defendant stated, "all he had was the little one". The Defendant then asked the Confidential Informant what he needed it for, and the Confidential Informant mentions "a lady".

The Confidential Informant later came back on March 9, (see page 1-4 of transcribed tape #2E), and ask the Defendant for the big one (shotgun) not the little one (pistol he kept at the store). Defendant advised him he did not keep the shotgun at the store, but it was at his home. The Confidential Informant then ask the Defendant to bring it to the store for him later in the afternoon. **MR. ORDUNO** advised the Confidential Informant that he does not want to keep the shotgun around the store. The Confidential Informant then ask the Defendant what time to come and get the shotgun and Defendant told him before work the next day. The Confidential Informant then tells **JONAS** he is going to do "something" with the gun, and he will take care of the Defendant. On March 10, 2000, (see transcript of Tape #3E), the Confidential Informant goes to the Defendant's business, **JONAS' GROCERY STORE** and tells the Defendant he is going to rob an old lady of

cocaine and money, (see page 1, 2, and 3). Thereafter Defendant gives the Confidential Informant the shotgun and he leaves the store.

**LAW**

The Defendant would show by all operative facts that he did possess a small pistol at the store for the employees' protection, (employees were his fiancé/co-owner, another employee and the Confidential Informant). The Defendant kept a shotgun at the home of he and his fiancé.

The Defendant would argue "sentencing entrapment" because the Defendant although predisposed to commit a minor or lesser offense (possession of shotgun/firearm by a convicted felon), he was not predisposed to have it used in a felony and was entrapped into committing a greater offense subjecting him to a greater punishment. **U.S. vs. Martin Parrilla, 114 F. 3d 124 (1997) U.S. vs. Michael Floyd Barth 990 F. 2d 422 (1993).**

**MOTION FOR DOWNWARD DEPARTURE**

**MR. ORDUNO,** respectfully moves for a downward departure from the otherwise applicable guideline offense level for the following reasons taken individually or collectively: (1) The Defendant accepted responsibility for the illegal conduct of possessing a firearm while a convicted felon. (2) The obstruction of Justice for which two (2) points were assessed, was due to treats made by the Defendant to the Confidential Informant. The Defendant could not understand why the Confidential Informant set him up for a charge where he had befriended him for a number of years. The Confidential Informant dated the Defendant's fiancé's cousin, ate dinner with the Defendant at Defendant's home, worked in the Defendant's store, and only knew of the shotgun because the Defendant had the gun on the office desk during the Christmas holidays of 1999, thereafter he took the shotgun back home. Based on the perceived loyalty/friendship between the Confidential Informant

and Defendant, he became angry feeling that the Confidential Informant had betrayed him, this lead to the verbal threat/obstruction of justice.

Prior to age thirty-five (35) the Defendant had no prior criminal history. In 1990 he was convicted of CCF, in 1991 he was convicted of Third Degree Grand Theft and in 1997, convicted of the sale of cigarettes to a minor, a misdemeanor.

## LAW

The Court may downward depart when there is a mitigating factor that has not been adequately considered in formulating the sentencing guidelines 18 U.S.C. § 5K2. 0. Because the Commission did not adequately take into account cases that are, for one reason or another "unusual" such factors will normally not be considered in the typical "heartland" of cases embodying the conduct that each Guideline describes. **United States vs. Reginald Coleman, 188 F. 3d 354 (1999).**

## CONCLUSION

Based upon the foregoing facts and arguments set forth above, the Defendant, **JONAS ORDUNO** respectfully requests that this Court imposes a sentence which is consistent with his objections to the Pre-Sentence Investigation Report and Motion for Downward Departure.

**RESPECTFULLY SUBMITTED:**

**WILLIAM J. CONE, JR., ESQUIRE**
**Attorney for Defendant**
**514 S.E. 7th Street**
**Fort Lauderdale, Florida 33301**
**Phone: (954) 764-0570**

**I HEREBY CERTIFY** that a true copy was furnished to: **DENNIS WOOLFOLK, U.S. Probation Officer, U.S. Courthouse, 300 N.E. First Avenue, Miami, Florida 33132-2126,** and **BRUCE O. BROWN, Assistant U.S. Attorney, 5OO East Broward Blvd., Suite 700, Fort Lauderdale, Florida 33394, on this 1st day of September, 2000.**

**POSITION OF PARTIES WITH RESPECT TO SENTENCING FACTORS**

**RE:** **ORDUNO, JONAS**

**SD/FL PACTS No:** 63710

**DOCKET NO:** 00-6109-CR-DIMITROULEAS

**OBJECTIONS DUE BY:** AUGUST 18, 2000

**DATE AVAILABLE for DISCLOSURE:** AUGUST 3, 2000

---

I have read the presentence investigation completed by the United States Probation Office.

_____ There are no disputed facts.

✓ There are unresolved factual disputes which are attached.

X ________________ 8/26/00
(Defendant) (Date)

________________ 8/31/00 FT. LAUDERDALE, FL
(Attorney) (Date) (Location)
WILLIAM JAMES CONE, JR.

________________ ________ MIAMI, FL
(Assistant U.S. Attorney) (Date) (Location)
BRUCE O. BROWN

Return To: DENNIS WOOLFOLK
U. S. Probation Officer
Room 315, U.S. Courthouse
300 N.E. First Avenue
Miami, Florida 33132-2126

5143: Shit.

UK: (Customers talking)

JO: This one, one day when I see that they're coming...a friend of mine was in back over there (unintelligible). (Unintelligible) everybody right here, even customers on the floor. And a the guy went in the backroom shit and they kick it down. They kick in the door and say don't move.

5143: Laugh.

JO: Who the hell pays?

5143: About five more minutes baby and we be out of here. (Unintelligible).

JO: Give me five...give me five.

5143: Jonas, you got that thing?

JO: A little (unintelligible).

5143: Ah...the little one!

JO: Huh Hum, the have the one....What...what do you need for (unintelligible).

5143: No, they probably...somebody might follow.

JO: (Unintelligible) Follow them for what?

5143: Huh?

JO: (Unintelligible). Follow them for what?

5143: No what I'm saying. The lady is to...a lady and another lady, somebody might be with them.

JO: Are they going to come in (unintelligible).

5143: No I'm saying...somebody...somebody might be watching the lady.

JO: Oh.

(Conversation going on in background unintelligible)

5143: (Unintelligible) we need one?

TAPED UNDERCOVER CONVERSATION
BUREAU OF ALCOHOL, TOBACCO AND FIREARMS
CASE NUMBER 764030-00-0014
TAPE NUMBER 2E, TAPED ON MARCH 9, 2000

JO: JONAS ORDUNO

43: MDO#5143

SA: Special Agent Steve McKean

Yea

What's up?

All right.

Yeah

Yea

JO: Did I tell you (unintelligible)

43: Nothing

JO: Hey, you made it?

43: Huh?

JO: You made it?

43: No...they...they, she had somebody with her.

JO: And?

43: Huh?

JO: So what happened to her.

43: I...I didn't have no "gat" with me.

JO: No what?

43: I didn't have...I didn't have no "gat" with me. Yeah she had, she had (unintelligible). Hey, Hey (unintelligible).

JO: Yeah.

43: Listen I'm tomorrow I want to use your thing.

JO: Okay.

43: That...that...the..the..the long big one.

JO: The big one?

43: Yeah.

JO: (Unintelligible) what time are you going to come?

43: I'm going to coming along. I'm going to coming along later like three o'clock.

JO: (Unintelligible) I got to go home and get it, I don't want to keep this thing out here.

43: Oh...well...I'm come...when I come I'll tell you when to get it.

JO: Yea, I don't leave it over here.

43: Oh, oh. Shit...so when's the best time to call?

JO: (Unintelligible).

43: Before (unintelligible) goes to work.

JO: (Unintelligible)

43: Oh, in the morning.

JO: (Unintelligible)

43: Oh all right....ah, don't worry (unintelligible).

JO: (Unintelligible)

43: Huh?

JO: (Unintelligible)

43: No they…they don't want to call.

JO: (Unintelligible).

43: They don't want to call, they don't want to come. There ain't enough money for them to come.

JO: (Unintelligible).

43: Huh?

JO: (Unintelligible).

43: No he don't want to come.

JO: (Unintelligible). What day is it?

43: The ninth. What's happening (unintelligible)?

JO: (Unintelligible)

43: Oh yea, no he don't want to come. If I (unintelligible) he's going to say he want to come with me.

JO: Okay.

43: Yeah…shit and I got to, I got to something but it's too little. Do you know what I'm talking about?

JO: The way it is (unintelligible).

43: Huh?

JO: (Unintelligible).

43: Don't worry about that man, I got you.

JO: What you mean I don't worry about that thing. I worry about it. I have to worry about it.

43: I'm going to (unintelligible) you here.

JO: What.

43: I'm going to do something here.

JO: You're going to what?

43: I'm going to do something.

JO: Okay.

43: Don't worry (unintelligible) take care of you.

JO: All right.

43: All right so far.

JO: Okay.

43: All right bye.

End of conversation.

SM: The date is March 9th 2000, the time is approximately 10:40PM. Case number 764030-00-0014, that was a UC call from MDO#5143 to one Jonas Orduno, end of tape

TAPED UNDERCOVER CONVERSATION
BUREAU OF ALCOHOL, TOBACCO AND FIREARMS
CASE NUMBER 764030-00-0014
TAPED ON MARCH 10, 2000, TAPE NO. 3E

5143: MDO#5143

5163: MDO#5163

JO: JONAS ORDUNO

SA: SPECIAL AGENT STEVE MCKEAN

SA: The date is March 10th, nineteen excuse me, two thousand. The time is approximately 1:45PM case number 764030-00-0014. This is a meeting between MDO#5143, MDO#5163 and one Jonas Orduno.

(Traffic noise and someone saying Hi.)

5163: (Unintelligible) head out there.

5143: (Unintelligible) Ninth street.

(Traffic noise)

5163: Still not that sure huh?

5143: (Unintelligible).

5163: Unt- huh, somewhere there yeah, but I think it's in storage.

(Long pause)

5143: (Unintelligible) lights.

5163: Yeah, the BMW (unintelligible). Did you see the commercial (unintelligible)?

5143: Yeah, but (unintelligible).

5163: (Unintelligible)

5143: (Unintelligible) that one.

5163: (Unintelligible) that BMW is bad.

5143: I don't know that one......Steve (unintelligible) too?

5163: Yeah.

5143: Hum.

5163: Yeah.

(Sounds like radio playing in the background and a long pause)

5143: (Unintelligible)

(Doors opening and closing)

5143: Lets get this money, honey....lets get this money, honey. (Unintelligible), I need one of these to take with me. Laughing

UK: Hum.

5143: (Unintelligible).....Hey, my friend...my friend tell me where...tell me where the money at. And ah...he said there's coke in it too.

JO: (Unintelligible)

5143: Grandma, his grandma here.

JO: The old lady.

5143: Yeah.

JO: I don't know nothing.

5143: Laugh.

JO: (Unintelligible) I don't know nothing.

5143: Laugh.

JO: I don't (unintelligible) money.

5143: Laughing.

JO: Don't kill me please. Don't kill the lady.

5143: Na, na...she a old lady.

JO: (Unintelligible) fucking delivery (unintelligible).

5143: You got what delivery!

JO: (Unintelligible)

5143: Oh.

JO: (Unintelligible)

5143: Yeah.

JO: (Unintelligible)

5143: Oh, he got like drinking stuff in here.

JO: (Unintelligible) I have some (unintelligible) I have some cheese.

5143: Boy, that bread hard.

JO: I have the cheese (unintelligible)

5163: (Unintelligible)

5143: (Unintelligible) what that is?

5163: That you put a patty in it.

5143: Yeah.

JO: (Unintelligible)

5163: (Unintelligible) you can put anything (unintelligible).

JO: (Unintelligible).

5143: Where can I pay (unintelligible)?

JO: (Unintelligible).

5143: (Unintelligible) a ham...hamburger (unintelligible).

JO: (Unintelligible)

United States Court of Appeals,
Eighth Circuit.

UNITED STATES of America, Appellant/Cross-appellee,
v.
Michael Floyd BARTH, Appellee/Cross-appellant.

Nos. 92-2152, 92-2180.

Submitted Nov. 9, 1992.
Decided April 6, 1993.
Rehearing and Rehearing En Banc Denied May 25, 1993.

Defendant was convicted in the United States District Court for the District of Minnesota, James M. Rosenbaum, J., of drug offenses, and government appealed from court's downward departure from Sentencing Guidelines, and defendant cross-appealed from denial of motion for new trial. The Court of Appeals, McMillian, Circuit Judge, held that: (1) sentencing entrapment may be relied upon to depart downward from Sentencing Guidelines; but (2) defendant did not establish sentencing entrapment; and (3) defendant was not entitled to new trial on the basis of newly discovered evidence.

Affirmed in part and vacated and remanded in part.

John R. Gibson, Fagg, and Hansen, JJ., would grant suggestion for rehearing en banc.

West Headnotes

[1] **Sentencing and Punishment** 870
350Hk870
(Formerly 110k1302)

Sentencing entrapment may be relied upon to depart downward from the Guidelines.

[2] Sentencing and Punishment 870
350Hk870
(Formerly 110k1302)

Defendant did not establish sentencing entrapment so as to warrant downward departure from the Guidelines on grounds that police continued to purchase drugs from him until they purchased over 50 grams, in view of evidence of defendant's predisposition to sell drugs as exhibited by his skillful methods of effecting drug deals.

[3] Criminal Law 945(2)
110k945(2)

Defendant was not entitled to new trial on the basis of newly discovered evidence of affidavit of government informant tending to corroborate defendant's entrapment defense in view of counteraffidavit in which the informant recanted the affidavit, claiming that it had been the product of harassment by defendant.

***423** Jeffrey S. Paulsen, Minneapolis, MN, argued, for appellant/cross- appellee.

Michael McGlennen, Minneapolis, MN, argued, for appellee/cross-appellant.

Before McMILLIAN, Circuit Judge, FRIEDMAN, [FN*] Senior Circuit Judge, and MORRIS SHEPPARD ARNOLD, Circuit Judge.

FN* The Honorable Daniel M. Friedman, Senior United States Circuit Judge for the Federal Circuit, sitting by designation.

McMILLIAN, Circuit Judge.

The United States appeals from the district court's downward departure from the applicable sentencing guidelines range in sentencing Michael Floyd Barth. 18 U.S.C. § 3742(b). Barth was found guilty by a jury of six counts of distribution of crack cocaine, in violation of 21 U.S.C. § 841(a)(1), and one count of possession with intent to distribute crack cocaine, in violation of 21 U.S.C. § 841(a)(1). Barth was sentenced to 72 months imprisonment, four years of supervised release, and a special assessment of $350.00. Barth cross-appeals and argues the district court abused its discretion in denying his motion for a new trial on the basis of newly discovered evidence. For reasons discussed below, we affirm Barth's conviction, but we vacate his sentence and remand for resentencing.

I.

Beginning in April 1991, Barth sold crack cocaine to undercover officer John Cich. The first sale was set up by a paid government informant named Charles "Chuckie" Smith; Smith introduced Barth to the undercover officer. Over a five-week period, Barth

Copr. © West 2000 No Claim to Orig. U.S. Govt. Works

made seven sales of crack cocaine to the undercover officer. Barth was arrested after the seventh sale. Law enforcement officers searched his residence following his arrest and found 2.4 grams of crack cocaine and drug paraphernalia. Barth was charged with seven counts of distribution and one count of possession with intent to distribute crack cocaine.

Barth's defense at trial was entrapment. He testified he had been introduced to crack cocaine by his friend Chuckie Smith, the government informant. Barth testified that he became a crack cocaine addict and sold crack for Smith in exchange for his own crack cocaine supplies. The government presented evidence that Barth was predisposed to distribute drugs--he used appropriate language and precautionary gestures and he was not hesitant to sell drugs. The government also disputed Barth's claim of addiction, because he did not appear under the influence of drugs during the deals and no user paraphernalia was found in his residence. Barth was acquitted of the first distribution count, but convicted of the other counts.

In the presentence investigation report, the probation officer excluded the drugs involved in the first distribution count and calculated a total drug quantity of 50.4 grams on which Barth's sentence would be based. The sentencing guideline range for 50.4 grams based on Barth's total offense level of 30 and a criminal history category of I is 121 to 151 months, including a 10-year mandatory minimum penalty because the offense involved more than 50 grams of crack cocaine. 21 U.S.C. § 841(a)(1). At sentencing, the district court reduced the quantity to 49.8 grams because of a dispute over the quantity of crack cocaine involved in count 7. The government does not appeal the reduction of the total drug quantity to less than 50 grams. The guideline sentencing range for 49.8 grams of crack is 97 to 121 months based on a total offense level of 30 and a criminal history category ***424** of I, including a five-year mandatory minimum sentence for amounts from five to less than 50 grams. 21 U.S.C. § 841(b)(1)(B).

The district court departed downward pursuant to 18 U.S.C. § 3553(b), which allows the sentencing court to take into account a circumstance not adequately taken into consideration by the sentencing commission. The district court found "sentencing entrapment" and ruled that none of the drugs following the fourth undercover buy would count toward Barth's sentence because, after that transaction, the investigatory objective was no longer focused on Barth but on his source. The district court found the sentencing commission failed to consider "the terrifying capacity for escalation of a defendant's sentence based on the investigating officer's determination of when to make an arrest." United States v. Barth, 788 F.Supp. 1055, 1057 (D.Minn.1992). The district court stated it was "not at all fortuitous that the agent arrested [Barth] only after he had arranged enough successive buys to reach the magic number (referring to 50 grams, the quantity that triggers the application of the 10-year mandatory minimum sentence)." Id. In reaching its decision, the district court found the issue before it to be "whether or not the circumstances under which these transactions occurred constitute a mitigating factor for sentencing purposes," and found that they did. Id. While noting that undercover investigations require "the orchestration of locations, timing, and methods of investigation," the district court stated "[investigators] cannot be permitted to orchestrate a defendant's sentence." Id. at 1058. The district court sentenced Barth to 72 months imprisonment, four years of supervised release, and a special assessment of $350.00.

II.

The government argues the district court had no authority to depart downward by arbitrarily disregarding the quantity of drugs involved in counts five through eight of which Barth was convicted. The government asserts there is no legal basis for the concept of sentencing entrapment, but argues that, even if there were, in the present case there was no outrageous conduct by the government.

Sentencing entrapment has been described by this court as " 'outrageous official conduct [which] overcomes the will of an individual predisposed only to dealing in small quantities' for the purpose of increasing the amount of drugs ... and the resulting sentence of the entrapped defendant." United States v. Rogers, 982 F.2d 1241, 1245 (8th Cir.1993), quoting United States v. Lenfesty, 923 F.2d 1293, 1300 (8th Cir.), cert. denied, 499 U.S. 968, 111 S.Ct. 1602, 113 L.Ed.2d 665 (1991). Although courts have not generally adopted the concept of sentencing entrapment, the sentencing guidelines are causing courts nationwide to rethink the long-established rule of entrapment. See, **e.g.**, United States v. Williams, 954 F.2d 668, 673 (11th Cir.1992) (rejecting the theory of sentence entrapment); United States v. Connell, 960 F.2d

Copr. © West 2000 No Claim to Orig. U.S. Govt. Works

191, 196 (1st Cir.1992) (refusing to apply sentencing entrapment). This court has declined "to say there is no such animal as 'sentencing entrapment,' " Lenfesty, 923 F.2d at 1300, yet has so far failed to apply sentencing entrapment. In United States v. Stuart, 923 F.2d 607, 613-14 (8th Cir.), cert. denied, 499 U.S. 967, 111 S.Ct. 1599, 113 L.Ed.2d 662 (1991), this court explained that adopting a sentencing entrapment theory would require us to "abandon [our] long-established rule of entrapment which focuses on the predisposition of the defendant to commit crime."

[1][2] This court has held that, in determining whether a departure is maintainable, we must consider several issues, including whether the circumstance relied upon in departing may be legally relied upon; whether, as a matter of fact, the circumstance is present in the record; and finally whether the magnitude of the departure is reasonable. United States v. Tucker, 986 F.2d 278, 279 (8th Cir.1993), citing United States v. Lang, 898 F.2d 1378, 1379-80 (8th Cir.1990). Under our standard of review, we hold that sentencing entrapment may be legally relied upon ***425** to depart under the sentencing guidelines, but factually was not present in this case, making the district court's departure unreasonable. While we are concerned with the government conduct in this case, Barth has failed to demonstrate that the government's conduct was outrageous or that the undercover officer's conduct overcame his predisposition to sell small quantities of crack cocaine. Barth argues he was introduced to crack by the government informant and was not predisposed to dealing crack cocaine. However, Barth's predisposition was exhibited by his skillful methods of effecting drug deals--he used the appropriate language, he "palmed" [FN1] the crack to the undercover officer during the first transaction, he owned a pager--a tool of the drug trade, and he was sophisticated enough to use a "runner" [FN2] on one occasion.

FN1. "Palming" is a method of transferring drugs during a handshake. It requires experience to be able to smoothly "palm" drugs without being noticed.

FN2. A "runner" is one who serves to distract police by fleeing on foot if the dealer's car is stopped.

Assuming for purposes of analysis that sentencing entrapment is a valid basis for downward departure under the sentencing guidelines, we do not agree with the district court that the undercover officer continued to purchase drugs merely to enhance Barth's potential sentence. As noted in United States v. Calva, 979 F.2d 119, 123 (8th Cir.1992), the sentencing guidelines' "mechanism of boosting sentences based on the cumulation of additional drug sales has the potential for abuse by police;" however, the present case is not such a case. The undercover officer arranged buys from Barth according to standard undercover procedure. The government's evidence showed that an established drug dealer will not readily sell large quantities of drugs to a new customer and that repeated buys are necessary to gain the dealer's confidence. Moreover, the fact that the undercover officer was a sheriff's deputy in a state where the threshold for invoking the most serious penalty is ten grams of crack strongly suggests that triggering the 50-gram threshold was not a motivating factor in continuing the investigation. Based on these considerations, we agree with the advice given in United States v. Connell that "courts should go very slowly before staking out rules that will deter government agents from the proper performance of their investigative duties." 960 F.2d at 196. [FN3]

FN3. While the government acknowledges the potential for improperly inflating sentences by delaying arrests, it argues that two checks in undercover operations provide adequate safeguards. First, an undercover officer who buys drugs from a dealer is aware the dealer has other customers he or she is supplying. Because the ultimate law enforcement goal is to get drug dealers off the streets, law enforcement agents have a strong incentive not to delay an arrest. Second, law enforcement agencies have limited resources and it is unlikely that an officer would make excessive purchases because the officer must account for every dollar expended to apprehend drug dealers. The government warns that adopting a sentencing enhancement theory would seriously hamper law enforcement efforts by unduly rewarding those drug dealers who are savvy enough to "go slow" with new customers.

We do not attempt to determine in the abstract what is permissible and impermissible conduct on the part of government agents. We share the confidence of the First Circuit that when a sufficiently egregious case arises, the sentencing court may deal with the situation by excluding the tainted transaction or departing from the sentencing guidelines. Id. While recognizing that sentencing entrapment may occur, we hold the record in the present case does not support the existence of sentencing entrapment and vacate the sentence and remand for resentencing.

Copr. © West 2000 No Claim to Orig. U.S. Govt. Works

III.

[3] Barth cross-appeals and argues the district court abused its discretion in denying his motion for a new trial based on newly discovered evidence. We hold the district court did not abuse its discretion in denying Barth's motion for a new trial. Following the trial, Chuckie Smith, the government informant, signed a statement that he had involved Barth in drugs. This affidavit tended to corroborate Barth's entrapment defense theory; however, the ***426** government produced a counter-affidavit in which Smith recanted his first statement, claiming the first affidavit had been the product of harassment by Barth who at that time was not in custody.

IV.

Accordingly, Barth's conviction is affirmed but his sentence is vacated and the case remanded to the district court for resentencing.

END OF DOCUMENT

Copr. © West 2000 No Claim to Orig. U.S. Govt. Works

United States Court of Appeals,
Ninth Circuit.

**UNITED STATES of America, Plaintiff-Appellee,**
**v.**
**Martin PARRILLA, Defendant-Appellant.**

**No. 96-30357.**

Submitted May 16, 1997. [FN*]

FN* The panel unanimously finds this case suitable for decision without oral argument. Fed.R.App.P. 34(a); 9th Cir.R. 34-4.

Decided May 16, 1997.

Defendant pled guilty to two counts of cocaine distribution, and the United States District Court for the District of Montana, Paul G. Hatfield, J., sentenced defendant to 18 months in prison and three years of supervised release, applying two-level sentence enhancement for possession of gun during drug-trafficking crime. Defendant appealed. The Court of Appeals, Pregerson, Circuit Judge, held that: (1) gun enhancement is not applicable where defendant proves sentencing entrapment claim by preponderance of evidence, and (2) district court made no specific factual findings regarding defendant's claim that he was entrapped into trading cocaine for gun, and thus sentence would be vacated and remanded for further proceedings.

Vacated and remanded.

West Headnotes

**[1] Criminal Law 1139**
110k1139

District court's interpretation of the Sentencing Guidelines is reviewed de novo. U.S.S.G. § 1B1.1 et seq., 18 U.S.C.A.

**[2] Criminal Law 1147**
110k1147

District court's application of Sentencing Guidelines is reviewed for abuse of discretion. U.S.S.G. § 1B1.1 et seq., 18 U.S.C.A.

**[3] Criminal Law 1158(1)**
110k1158(1)

District court's findings of fact underlying sentencing decision are review for clear error. U.S.S.G. § 1B1.1 et seq., 18 U.S.C.A.

**[4] Sentencing and Punishment 726(3)**
350Hk726(3)
(Formerly 110k1208.6(2))

If defendant was entrapped into trading cocaine for gun, then doctrine of sentencing entrapment would preclude application of two-level sentence enhancement for possession of gun during drug-trafficking crime. U.S.S.G. § 2D1.1(b)(1), 18 U.S.C.A.

**[5] Sentencing and Punishment 870**
350Hk870
(Formerly 110k1302)

"Sentencing entrapment" occurs when defendant, although predisposed to commit minor or lesser offense, is entrapped into committing greater offense subject to greater punishment.

**[6] Sentencing and Punishment 870**
350Hk870
(Formerly 110k1302)

As alternative remedies for sentencing entrapment, sentencing court may decline to apply statutory penalty provision for greater offense that defendant was induced to commit, and instead apply penalty provision for lesser offense that defendant was predisposed to commit, or sentencing court may exercise its discretion to depart downward from sentencing range for greater offense that defendant was induced to commit. U.S.S.G. § 1B1.1 et seq., 18 U.S.C.A.

**[7] Sentencing and Punishment 973**
350Hk973
(Formerly 110k1313(2))

Defendant bears burden of proving sentencing entrapment by preponderance of evidence.

**[8] Sentencing and Punishment 995**
350Hk995
(Formerly 110k1319)

District court has obligation to make express factual findings as to whether defendant, in seeking to establish sentence entrapment, has met his burden of proof.

**[9] Criminal Law ⚿1126**
110k1126

Absent showing that district court considered all relevant evidence or made required findings to reject defendant's sentencing entrapment claim, record was not sufficiently developed to show whether district court properly applied two- level sentence enhancement for possession of gun during drug-trafficking crime. U.S.S.G. § 2D1.1(b)(1), 18 U.S.C.A.

**[10] Sentencing and Punishment ⚿726(3)**
350Hk726(3)
(Formerly 110k1208.6(2))

Two-level sentence enhancement for possession of gun during drug-trafficking crime is not applicable where defendant shows by preponderance of evidence that he was entrapped into possessing gun. U.S.S.G. § 2D1.1(b)(1), 18 U.S.C.A.

***125** Kris A. McLean, Assistant United States Attorney, Helena, MT, for plaintiff-appellee.

Daniel Donovan, Federal Defenders of Montana, Great Falls, MT, for defendant-appellant.

Appeal from the United States District Court for the District of Montana, Paul G. Hatfield, District Judge, Presiding. D.C. No. CR-96-01000-PGH.

Before: WRIGHT, PREGERSON, and THOMPSON, Circuit Judges.

PREGERSON, Circuit Judge:

This case presents the issue whether a two-level sentence enhancement for possession of a gun during a drug-trafficking crime may be applied where the defendant presents evidence that he was entrapped into possessing the gun. We hold that the gun enhancement is not applicable where the defendant proves his sentencing entrapment claim by a preponderance of the evidence. Because the district court in the present case made no specific factual findings regarding the evidence of sentencing entrapment, we vacate the defendant's sentence and remand for further proceedings.

FACTS AND PRIOR PROCEEDINGS

On April 15, 1996, a documented informant notified the Butte-Silver Bow Sheriff's Office that he had purchased cocaine from Defendant-Appellant Martin Parrilla ("Parrilla"). ***126** The Sheriff's Office then fitted the informant with a body wire and gave him $140 to buy more cocaine from Parrilla. The informant made a second purchase of cocaine from Parrilla later the same day.

On April 17, 1996, the Sheriff's Office and a special agent from the Bureau of Alcohol, Tobacco, and Firearms again fitted the informant with a body wire. This time, they gave the informant a nine-millimeter Llama handgun to trade with Parrilla for more cocaine. The government contends that Parrilla asked the informant for a gun to sell to Parrilla's gang friends in Billings. Parrilla, on the other hand, denies any gang connections and contends that it was the informant who proposed bringing a gun into the trade. The transcripts of the April 15 and April 17 body wire recordings do not contain any audible portions that confirm either party's explanation for the gun.

It is undisputed, however, that on April 17, 1996, the informant successfully traded the nine-millimeter LLama handgun for approximately 1.4 grams of cocaine from Parrilla. Later that day, police officers executed a search warrant at Parrilla's residence. The officers found the gun, cocaine, drug paraphernalia, and $905 in cash. Parrilla was taken into custody.

On May 16, 1996, Parrilla was indicted in the United States District Court for the District of Montana on three counts: two counts of distributing cocaine in violation of 21 U.S.C. § 841(a)(1) and one count of using or carrying a gun during a drug-trafficking crime in violation of 18 U.S.C. § 924(c)(1). On June 21, 1996, Parrilla moved to dismiss the gun count on grounds of entrapment as a matter of law. The district court took Parrilla's motion under advisement until time of trial.

The parties reached a plea agreement before trial, however, with the result that Parrilla never presented his entrapment defense. Instead, Parrilla pleaded guilty to the two counts of cocaine distribution; and the government filed a motion to dismiss the gun count, which the district court granted.

At Parrilla's sentencing hearing on November 14,

Copr. © West 2000 No Claim to Orig. U.S. Govt. Works

1996, the government recommended a two-level sentence enhancement under U.S.S.G. § 2D1.1(b)(1) for possession of a gun during a drug-trafficking crime. Parrilla argued that the gun enhancement was inapplicable because he had been entrapped into possessing the gun. Parrilla alternatively argued that if the gun enhancement were to be applied, it should be offset with a downward departure for sentencing entrapment. The district court rejected both of Parrilla's arguments and adopted the government's recommendation, resulting in a total offense level of twelve and a sentencing range of fifteen to twenty-one months in prison. See U.S.S.G. Sentencing Table. The court sentenced Parrilla to eighteen months in prison and three years of supervised release.

Parrilla timely appeals his sentence. We have jurisdiction under 28 U.S.C. § 1291.

STANDARD OF REVIEW

[1][2][3] We review de novo the district court's interpretation of the Sentencing Guidelines. United States v. Robinson, 94 F.3d 1325, 1327 (9th Cir.1996). We review for abuse of discretion the district court's application of the Sentencing Guidelines. Id. We review for clear error the district court's findings of fact underlying the sentencing decision. Id.

ANALYSIS

Sentencing Guideline § 2D1.1(b)(1) provides: "If a dangerous weapon (including a firearm) was possessed [during a drug-trafficking crime], increase by 2 levels." Application Note 3 to § 2D1.1 explains: "The enhancement for weapon possession reflects the increased danger of violence when drug traffickers possess weapons. The adjustment should be applied if the weapon was present, unless it is clearly improbable that the weapon was connected with the offense."

[4] In the present case, Parrilla does not deny that in trading cocaine for a gun in the April 17 transaction, he "possessed" a gun within the meaning of § 2D1.1(b)(1). The plain language of the guideline thus appears to require a two-level enhancement of Parrilla's sentence. The guideline, however, fails ***127** to address sentencing entrapment as asserted by Parrilla.

[5] Sentencing entrapment occurs when "a defendant, although predisposed to commit a minor or lesser offense, is entrapped in[to] committing a greater offense subject to greater punishment." United States v. Staufer, 38 F.3d 1103, 1106 (9th Cir.1994) (quoting United States v. Stuart, 923 F.2d 607, 614 (8th Cir.1991)). Before the enactment of the Sentencing Guidelines, a court could prevent sentencing entrapment by exercising its discretion to ensure that a given sentence reflected the defendant's criminal predisposition and culpability. Id. Under the determinate system of the Sentencing Guidelines, however, a court has far less latitude in sentencing. Id. at 1107. As a result, we now face "the unfairness and arbitrariness of allowing drug enforcement agents to put unwarranted pressure on a defendant in order to increase his or her sentence without regard for his predisposition, his capacity to commit the crime on his own, and the extent of his culpability." Id. In this context, "courts can ensure that the sentences imposed reflect the defendants' degree of culpability only if they are able to reduce the sentences of defendants who are not predisposed to engage in deals as large as those induced by the government." Id.

[6] We have previously identified two alternative remedies for sentencing entrapment. First, a sentencing court may decline to apply the statutory penalty provision for the greater offense that the defendant was induced to commit, and instead apply the penalty provision for the lesser offense that the defendant was predisposed to commit. See, e.g., United States v. Ramirez- Rangel, 103 F.3d 1501, 1507-08 (9th Cir.1997) (holding that defendants entrapped into trading methamphetamine for machine guns instead of ordinary guns should be sentenced in accordance with the five-year mandatory minimum for use of ordinary guns, not the thirty-year mandatory minimum for use of machine guns). Second, a sentencing court may exercise its discretion to depart downward from the sentencing range for the greater offense that the defendant was induced to commit. See, e.g., Staufer, 38 F.3d at 1108 (holding that sentencing entrapment is a proper ground for downward departure where defendant was not predisposed to engage in drug transaction of magnitude for which he was convicted).

In the present case, Parrilla offers alternative arguments for each type of remedy. First, he argues that the district court should never have applied the gun enhancement provision of § 2D1.1(b)(1). Second, he argues that once the district court chose to apply the gun enhancement, the court should have

Copr. © West 2000 No Claim to Orig. U.S. Govt. Works

granted a downward departure to offset the enhancement. We need not determine, for the sake of Parrilla's second argument, whether the district court's refusal to depart downward is reviewable. See United States v. Eyler, 67 F.3d 1386, 1390 n. 5 (9th Cir.1995) ("Generally, a district court's refusal to grant a discretionary departure is not reviewable on appeal."). Instead, we resolve Parrilla's appeal on the basis of his first argument: his contention that the gun enhancement provision should not have been applied in the first place.

We hold that if Parrilla was entrapped into trading cocaine for a gun, then the doctrine of sentencing entrapment precludes application of the two-level gun enhancement under § 2D1.1(b)(1). Our holding rests upon the basic principle that a defendant's sentence should reflect "his predisposition, his capacity to commit the crime on his own, and the extent of his culpability." Staufer, 38 F.3d at 1107.

[7][8] Parrilla bears the burden of proving sentencing entrapment by a preponderance of the evidence. See United States v. Naranjo, 52 F.3d 245, 250 (9th Cir.1995) (noting that defendant bears burden of proof to demonstrate lack of predisposition for sentencing entrapment claim); United States v. Cantu, 12 F.3d 1506, 1511 (9th Cir.1993) (stating that "[t]he sentencing court determines facts relevant to sentencing by a preponderance of the evidence"). The district court, on the other hand, has the obligation to make "express factual findings" as to whether Parrilla has met his burden of proof. Naranjo, 52 F.3d at 250.

***128** [9] The government contends that the district court properly considered and rejected Parrilla's evidence of sentencing entrapment at the sentencing hearing. At the hearing, the district court initially remarked that "according to the presentence [report]--this defendant said he could sell guns in Billings--handguns. And so then the informant took this gun out of the police station in Butte and sold it to--traded drugs for the gun." However, the district court then asked Parrilla's counsel if these assertions in the presentence report were not accurate. Parrilla's counsel responded that "those statements were not on tape, so we dispute those"; and asked the district court to examine the evidence on the body wire recordings that Parrilla had no prior experience with guns. The court then asked whether Parrilla had grown up in a place where guns were commonly used. There was no further discussion of any evidence as to whether Parrilla was predisposed to dealing with guns; and the district court never drew any explicit conclusions about the factual support for Parrilla's sentencing entrapment claim.

Because nothing in the record shows that the district court considered all the relevant evidence or made the required findings to reject Parrilla's sentencing entrapment claim, the record is not sufficiently developed to show whether the district court properly applied the gun enhancement. Accordingly, we vacate Parrilla's sentence and remand to the district court for reconsideration of the evidence relating to Parrilla's sentencing entrapment claim. See Naranjo, 52 F.3d at 251 (vacating sentence and remanding for resentencing where "[b]ecause the district court provided no factual findings on the record, we are unable to ascertain what facts it relied upon in finding that Naranjo did not adequately prove sentencing entrapment").

On remand, the district court should conduct further proceedings as may be necessary to enable it to make appropriate findings to resolve the factual dispute whether Parrilla was entrapped into possessing the gun. If the district court finds that Parrilla was entrapped into possessing the gun, then the two-level gun enhancement under § 2D1.1(b)(1) would not be applicable and prompt resentencing would be required to bring Parrilla's sentence within the range of ten to sixteen months. See U.S.S.G. Sentencing Table. If, on the other hand, the district court finds that Parrilla was not entrapped, then the two-level enhancement was properly applied and Parrilla's original sentence should be reinstated.

CONCLUSION

[10] A two-level sentence enhancement under U.S.S.G. § 2D1.1(b)(1) for possession of a gun during a drug-trafficking crime is not applicable where the defendant shows by a preponderance of the evidence that he was entrapped into possessing the gun. In Parrilla's case, the district court applied the gun enhancement without making any factual findings regarding the evidence of sentencing entrapment. Therefore, we vacate Parrilla's sentence and remand for further proceedings as may be necessary to enable the district court to make appropriate findings to resolve the factual dispute whether sentencing entrapment occurred.

VACATED and REMANDED.

END OF DOCUMENT

Copr. © West 2000 No Claim to Orig. U.S. Govt. Works

United States Court of Appeals,
Sixth Circuit.

UNITED STATES of America, Plaintiff-Appellee,
v.
Reginald COLEMAN, Defendant-Appellant.

No. 96-1823.

Argued: Sept. 23, 1998
Decided and Filed: July 28, 1999

Defendant pleaded guilty in the United States District Court for the Eastern District of Michigan, Nancy G. Edmunds, J., to distribution of controlled substance. Defendant appealed his sentence. After panel of the Court of Appeals reversed and remanded, rehearing en banc was granted. On rehearing en banc, the Court of Appeals, Nathaniel R. Jones, Circuit Judge, held that: (1) Court of Appeals could review claim that district court erred in refusing to grant downward sentencing departure based on government's allegedly improper investigatory techniques; (2) district court may not categorically exclude any non-prohibited factors from consideration for departure; (3) district court had to consider allegedly improper investigatory techniques as basis for departure; and (4) aggregation of factors may warrant departure.

Reversed and remanded.

Kennedy, Circuit Judge, filed dissenting opinion in which Ryan, Alan E. Norris, Suhrheinrich, Siler, and Batchelder, Circuit Judges, joined.

Alan E. Norris, Circuit Judge, filed dissenting opinion in which Kennedy, Ryan, Boggs, Suhrheinrich, Siler, and Batchelder, Circuit Judges, joined.

Opinion, 138 F.3d 616, vacated.

West Headnotes

[1] Criminal Law ⚷1023(11)
110k1023(11)

Generally, a court's failure to exercise its discretion and grant a downward departure from the sentencing guidelines is not reviewable, and an appellate court may only review a denial of a motion for a downward departure if the district court judge incorrectly believed that [s]he lacked any authority to consider defendant's mitigating circumstances as well as the discretion to deviate from the guidelines. U.S.S.G. § 1B1.1 et seq., 18 U.S.C.A.

[2] Criminal Law ⚷1023(11)
110k1023(11)

Court of Appeals could review defendant's claim that district court erred in refusing to grant downward sentencing departure based on government's allegedly improper investigatory techniques, where district court expressed belief that it lacked legal authority to grant downward departure on that basis. U.S.S.G. § 1B1.1 et seq., 18 U.S.C.A.

[3] Criminal Law ⚷1147
110k1147

Court of Appeals reviews a district court's belief that it lacked the authority for a downward departure under the sentencing guidelines under an abuse of discretion standard, and, although a determination of the permissible factors a court may consider in departing downward under any circumstances is a question of law, and Court of Appeals is not required to defer on that point, the abuse of discretion standard includes review to determine whether a court was guided by an erroneous legal conclusion. U.S.S.G. § 1B1.1 et seq., 18 U.S.C.A.

[4] Criminal Law ⚷1147
110k1147

A district court by definition abuses its discretion when it makes an error of law.

[5] Sentencing and Punishment ⚷850
350Hk850
(Formerly 110k1291)

A court may grant a downward departure from the sentencing guidelines, if circumstances exist which take the case out of the typical "heartland" of cases embodied by the guideline at issue. 18 U.S.C.A. § 3553(b); U.S.S.G. § 5K2.0, p.s., 18 U.S.C.A.

[6] Sentencing and Punishment ⚷850
y ruled on a particular factor as a basis for downward departure from the sentencing guidelines does not excuse the district court from considering the factor as a potential basis for departure. U.S.S.G. § 1B1.1

Copr. © West 2000 No Claim to Orig. U.S. Govt. Works

et seq., 18 U.S.C.A.

[8] Sentencing and Punishment 🔑870
350Hk870
(Formerly 110k1302)

Where defendant sought downward departure from sentencing guidelines based on government's allegedly improper investigatory techniques, which was factor not considered by the guidelines, court was required to consider whether that factor made case sufficiently atypical to remove it from the "heartland," by examining structure and theory of relevant guidelines, and the guidelines as a whole. U.S.S.G. § 1B1.1 et seq., 18 U.S.C.A.

[9] Sentencing and Punishment 🔑850
350Hk850
(Formerly 110k1291)

Determination that a downward departure from the sentencing guidelines is warranted does not require implication of one or more of statutory sentencing goals, namely, deterrence, incapacitation, retribution and correction. U.S.S.G. § 1B1.1 et seq., 18 U.S.C.A.

[10] Sentencing and Punishment 🔑850
350Hk850
(Formerly 110k1302)

Aggregation of factors may warrant downward departure from sentencing guidelines, by taking case out of the "heartland" of typical cases. U.S.S.G. § 5K2.0, comment. (n. 7), 18 U.S.C.A.

*355 Jonathan M. Epstein (argued and briefed), Federal Public Defenders Office, Detroit, Michigan, for Defendant-Appellant.

Krishna S. Dighe, Office of the U.S. Attorney, Detroit, Michigan, David J. Debold, Assistant U.S. Attorney (argued and briefed), Detroit, Michigan, for Plaintiff-Appellee.

Before: MARTIN, Chief Judge; MERRITT, KENNEDY, JONES, NELSON, RYAN, BOGGS, NORRIS, SUHRHEINRICH, SILER, BATCHELDER, DAUGHTREY, MOORE, COLE, CLAY, and GILMAN, Circuit Judges.

NATHANIEL R. JONES, J., delivered the opinion of the court, in which BOYCE F. MARTIN, Jr., C.J., MERRITT, DAVID A. NELSON, DAUGHTREY, MOORE, COLE, CLAY, and GILMAN, JJ., joined. KENNEDY, J. (pp. 362-363), delivered a separate dissenting opinion, in which RYAN, ALAN E. NORRIS, *356 SUHRHEINRICH, SILER, and BATCHELDER, JJ., joined, with ALAN E. NORRIS, J. (pp. 363-364), also delivering a separate dissenting opinion, in which KENNEDY, RYAN, BOGGS, SUHRHEINRICH, SILER, and BATCHELDER, JJ., joined.

OPINION

NATHANIEL R. JONES, Circuit Judge.

Defendant Reginald Coleman appeals the sentence imposed following his plea of guilty to distribution of a controlled substance (crack cocaine) in violation of 21 U.S.C. § 841(a)(1). Coleman contends that the district court erred in concluding that it lacked the legal authority to depart downward based on the government's allegedly improper investigatory techniques. We granted en banc review primarily to address the applicability of Koon v. United States, 518 U.S. 81, 116 S.Ct. 2035, 135 L.Ed.2d 392 (1996) to the facts of this case. We now hold that Koon, a decision of which the district court did not have the benefit at the time of sentencing, makes clear that a trial judge cannot categorically exclude any non-prohibited factors from consideration for a downward departure. We therefore reverse and remand.

I. Facts

In December of 1994, Coleman was approached by an undercover agent for the Bureau of Alcohol Tobacco and Firearms ("ATF"). The agent, Special Agent Joseph Secrete, was conducting an investigation in which he posed as a successful businessman and approached ex-felons as they were lawfully reporting to their parole office. According to the government, Secrete would receive a tip that certain individuals who were on parole for state convictions, and who also listed inaccurate addresses, may be engaging in criminal activity. Secrete would then obtain a photograph of the individual and the location where the individual reported to a parole officer. After identifying the individual, Secrete would approach him as he was leaving his parole office. According to Coleman, Secrete would subsequently give targeted parolees a business card, which identified Secrete as the owner of the fictitious "Atlantic Tours & Financing," and befriend the parolees by offering them rides, trips, jobs, and other

Copr. © West 2000 No Claim to Orig. U.S. Govt. Works

business opportunities. Secrete would then offer to deal in illegal narcotics or firearms. Apparently, all of the suspects targeted for investigation were African-American. [FN1] Secrete approached Coleman, and on five separate occasions, Coleman delivered cocaine base to him. On each occasion, Secrete would give Coleman cash to purchase drugs. Coleman would then take the money, drive out of Secrete's sight, and return with crack cocaine. Secrete would thereafter pay Coleman $50.00 for his services.

FN1. According to the government, there were several motions by different defendants attacking this investigative technique. In addition, the technique prompted the Federal Defender's Office to conduct a survey of all such cases in the Eastern District of Michigan.

On September 7, 1995, Coleman was indicted on five counts of distribution of a controlled substance under 21 U.S.C. § 841(a)(1). Pursuant to a Rule 11 plea agreement, Coleman pleaded guilty to two counts; the other counts were dismissed. On May 21, 1996, after his conviction, Coleman filed a motion for a downward departure, arguing that his offenses were committed due to the improper investigative techniques of the ATF. Coleman alleged that the ATF operation impermissibly targeted and induced parolees to commit crimes, and specifically targeted only African-Americans. Coleman asserted that these factors removed the case from the "heartland" of drug offenses. The district court found that Coleman's argument was not a sentencing issue, but rather a selective prosecution issue, and thus, an improper legal basis for a downward departure. Consequently, the district court sentenced Coleman to a term of 100 months of imprisonment, four years of supervised release *357 and a mandatory special assessment of $100.00. Coleman thereafter appealed. A divided panel of this court reversed and remanded, holding that in light of Koon, a trial judge cannot categorically exclude any non-prohibited factors from consideration for a downward departure. See United States v. Coleman, 138 F.3d 616 (6th Cir.), vacated, 146 F.3d 1051 (6th Cir.1998). We granted rehearing en banc and also vacated the sentence and remand.

II. Discussion

[1][2] Generally, a court's failure to exercise its discretion and grant a downward departure is not reviewable. See, e.g., United States v. Landers, 39 F.3d 643, 649 (6th Cir.1994). An appellate court may only review a denial of a motion for a downward departure if the district court judge "incorrectly believed that [s]he lacked any authority to consider defendant's mitigating circumstances as well as the discretion to deviate from the guidelines." Id. (citation omitted). Here, the district court believed that it lacked the authority and discretion to depart downward. The district court repeatedly stated that it believed Coleman's motion was a selective prosecution issue, rather than an issue to be determined in a motion for a downward departure. [FN2] The district court further concluded that because Coleman was complaining only about investigatory techniques, it did not "see a legal basis for using [investigatory techniques] as a downward departure here." J.A. at 120. Significantly, the district court noted that even if there was hard evidence of improper investigatory techniques, it still would not be an "issue" which would entitle the defendant to a downward departure. Thus, it is clear that the district court was far more concerned with the procedural posture of the claim than with whether there was sufficient evidence to support a downward departure. Viewing the district court's statements in their entirety, it is apparent that the district court believed that Coleman's downward departure arguments could not be brought at sentencing, and that it did not have the authority or discretion to seriously consider defendant's claims of improper investigatory techniques at that time. Accordingly, we may review the district court's decision.

FN2. For example, the district judge stated, "the problem I have with the motion ... is that it's really not a sentencing issue [ ], it's not a downward departure issue. If anything, it belongs in a motion to dismiss the indictment or something along those lines." J.A. at 119. Later she reiterated, "again you're really complaining about investigatory techniques and, again, that kind of goes to the selective enforcement issue." J.A at 120.

A. Standard of Review

[3][4] We review a district court's belief that it lacked the authority for a downward departure under the Sentencing Guidelines under an abuse of discretion standard. Koon, 518 U.S. at 99-100, 116 S.Ct. 2035. Thus, we note that although a determination of the permissible factors a court may consider in departing downward under any circumstances is a question of law, and we are not

Copr. © West 2000 No Claim to Orig. U.S. Govt. Works

required to defer on that point, the abuse of discretion standard includes review to determine whether a court was guided by an erroneous legal conclusion. Id. A district court by definition abuses its discretion when it makes an error of law. Id. at 100, 116 S.Ct. 2035.

B. Investigative Techniques

During the sentencing hearing and on appeal, the government argued that the district court lacked the authority to consider a downward departure, asserting that even if Coleman had in fact established a case of selective prosecution, there was no basis for a downward departure and the government was "unaware of any legal authority ... to depart below the applicable sentencing guideline range because of the method of investigation." Gov't Br. at 13. Moreover, the government alleged that courts have repeatedly refused to allow downward departures ***358** based on governmental misconduct. The government, however, misunderstands the import of Koon. [FN3]

FN3. The government also overstates its position. Even before Koon, courts had, in some instances, granted downward departures based in part on improper actions of the government. For example, courts have utilized downward departures in cases where the government has induced a defendant to commit a crime, but the defense of entrapment is not warranted. See, e.g., United States v. McClelland, 72 F.3d 717, 724- 25 (9th Cir.1995); United States v. Wise, 976 F.2d 393 (8th Cir.1992). These courts applied U.S.S.G. § 5K2.12 as a basis for their decision. That section, entitled "Coercion and Duress," considered the fact that a defendant may have committed an offense because of "serious coercion, blackmail or duress, under circumstances not amounting to a complete defense," an encouraged factor in downward departure determinations. See 1997 U.S.S.G. § 5K2.12. In addition, courts have granted motions to depart downward in cases of "**sentencing entrapment**" where the government has specifically induced defendants to commit more serious crimes in order to **enhance** their punishment. See, e.g., United States v. Barth, 990 F.2d 422, 424 (8th Cir.1993).

[5] A downward departure is permitted when there is a mitigating factor that has not been adequately considered in formulating the Sentencing Guidelines. 18 U.S.C. § 3553(b); see also 1998 U.S.S.G. § 5K2.0. Because the Commission "did not adequately take into account cases that are, for one reason or another 'unusual,' " such factors will normally not be considered in the typical "heartland" of cases embodying the conduct that each Guideline describes. Koon, 518 U.S. at 93, 116 S.Ct. 2035 (quoting 1995 U.S.S.G. ch. 1, pt. A, intro. comment. 4(b)). A court may grant a downward departure, then, if circumstances exist which take the case out of the typical "heartland" of cases embodied by the Guideline. Id. at 93-94, 116 S.Ct. 2035. The Supreme Court, adopting a test proposed by the First Circuit, stated that a court considering a departure should inquire:

> 1) What features of this case, potentially, take it outside the Guidelines' "heartland" and make of it a special, or unusual, case? 2) Has the Commission forbidden departures based on those features? 3) If not, has the Commission encouraged departures based on those features? 4) If not, has the Commission discouraged departures based on those features?

Id. at 95, 116 S.Ct. 2035 (citation omitted). "If a factor is unmentioned in the Guidelines, the court must, after considering the 'structure and theory of both relevant individual guidelines and the Guidelines taken as a whole,' decide whether it is sufficient to take the case out of the Guideline's heartland." Id. at 96, 116 S.Ct. 2035 (citation omitted)(emphasis added).

[6][7] There are a potentially infinite number of factors which may warrant a departure. Koon makes clear that a court may not categorically exclude the consideration of any one factor, and that to do so would be a transgression of the policymaking authority vested in the Commission. Id. at 106-07, 116 S.Ct. 2035. A court is strictly limited to determining merely "whether the Commission has proscribed ... consideration of the factor," and if not, "the sentencing court must determine whether the factor, as occurring in the particular circumstances, takes the case outside the heartland of the applicable Guideline." Id. at 109, 116 S.Ct. 2035; accord United States v. Mendoza, 121 F.3d 510, 513 (9th Cir.1997); United States v. Core, 125 F.3d 74, 76-77 (2d Cir.1997 ) ("[T]he Guidelines themselves make clear that a court should consider in every case, not only in rare circumstances, whether a departure is appropriate" and "absent express prohibition, a sentencing court is 'free to consider in an unusual case whether or not the factors that make it unusual ... are present in sufficient kind or degree to warrant a departure' ") (citations omitted), cert. denied sub nom. Reyes v. United States, 522 U.S. 1067, 118 S.Ct. 735, 139 L.Ed.2d 672 (1998); United States v.

Copr. © West 2000 No Claim to Orig. U.S. Govt. Works

Brock, 108 F.3d 31, 34 (4th Cir.1997) ***359** ("[T]he unmistakable teaching of Koon is that only those factors on which the Commission has forbidden reliance ... never may provide an appropriate basis for departure. All others potentially may provide a basis for departure under appropriate circumstances.") (citations omitted); United States v. Sherpa, 97 F.3d 1239, 1244 (9th Cir.1996). The only factors which are so precluded from consideration are race, sex, national origin, creed, religion, and socio- economic status, U.S.S.G. § 5H1.10; lack of guidance as a youth, U.S.S.G. § 5H1.12; drug or alcohol dependency, U.S.S.G. § 5H1.4; and economic hardship, U.S.S.G. § 5K2.12. All other factors which a defendant posits as evidence that a downward departure may be warranted must be considered by the district court utilizing the analysis described above and making a "refined assessment of the many facts bearing on the outcome, informed by its vantage point and day-to-day experience in criminal sentencing." Koon, 518 U.S. at 98, 116 S.Ct. 2035. To do otherwise would directly contravene the express holding of Koon and "would run afoul of one of the important concerns articulated [by that decision]." United States v. Olbres, 99 F.3d 28, 34 (1st Cir.1996). Thus, we reiterate that there are an unquantifiable number of potential departure factors, including heretofore unknown factors that have not been previously considered by a court. Simply because a court has not directly ruled on the factor at issue does not excuse the district court from considering the factor as a potential basis for a downward departure.

Additionally, to the extent that any of our prior cases have indicated that such factors as improper investigative techniques may never warrant consideration for a downward departure, we follow our sister circuits in finding that Koon overrules all such determinations. See, e.g., Brock, 108 F.3d at 35 (finding that the Fourth Circuit's prior holding, that post- offense rehabilitation can never form a proper basis for departure, is effectively overruled by Koon); Sherpa, 97 F.3d at 1244 (finding that the Ninth Circuit's prior holding, that a sentencing judge may not reconsider facts that have been necessarily rejected by the jury's guilty verdict, is overruled by Koon).

[8] Improper investigative techniques, used as a basis for departing downward, are not factors considered by the Guidelines. [FN4] Thus, the district court was required to examine the structure and theory of the relevant Guidelines, and the Guidelines as a whole, to determine whether the grounds proffered by Coleman made the case sufficiently atypical to remove it from the "heartland." Erroneously believing that it did not have the authority to consider a downward departure, the district court discounted Coleman's request for such a departure, and thus abused its discretion.

FN4. We note that, obviously, this differs from the prohibited factor of race, which can never serve as a basis for a downward departure. Coleman's actual race is irrelevant; it is only the government's allegedly improper targeting and inducement of Coleman which is at issue.

[9] The government also argues that in making the determination that a downward departure is warranted, one or more of the statutory sentencing goals (deterrence, incapacitation, retribution and correction) must be implicated. We reject such a narrow application of the downward departure mechanism. The government completely misreads the Seventh Circuit case on which it relies for such a proposition. In United States v. Pullen, 89 F.3d 368 (7th Cir.1996), cert. denied, 519 U.S. 1066, 117 S.Ct. 706, 136 L.Ed.2d 627 (1997), the court noted that it had previously assumed that a departure from the Guidelines range must be consistent with the statutory sentencing goals of deterrence, incapacitation, retribution and correction. Id. at 370. The court went on to note, however, that "[t]he Supreme Court has since rejected this limitation on sentencing ***360** discretion." Id. Thus, the court merely determined that those goals were reasons in favor of departure, but by no means determinative. Id. We make no finding with respect to whether such goals do in fact give additional reasons in favor of departure, but merely note that the Sentencing Guidelines mention "nothing about requiring each potential departure factor to advance one of the specified goals." United States v. Carter, 122 F.3d 469, 473 (7th Cir.1997) (citing Koon).

Courts have broadly interpreted Koon and considered downward departures in a number of cases in which a downward departure may not have been applicable previously. See, e.g., United States v. Brennick, 134 F.3d 10, 14 (1st Cir.1998) (finding defendant's alleged intent to eventually pay withheld taxes to government could take the defendant's case out of the heartland of tax evasion cases); United States v. Lipman, 133 F.3d 726, 730 (9th Cir.1998) (finding that district court could have the authority to consider cultural assimilation as a basis for a

Copr. © West 2000 No Claim to Orig. U.S. Govt. Works

downward departure); United States v. Kapitzke, 130 F.3d 820, 824 (8th Cir.1997) (affirming downward departure based on defendant's post-offense rehabilitation efforts); Brock, 108 F.3d at 35 (remanding case for determination of whether downward departure was warranted for post-offense rehabilitation); United States v. Rioux, 97 F.3d 648, 663 (2d Cir.1996) (affirming downward departure on the basis of defendant's kidney failure and charitable good works); United States v. Shasky, 939 F.Supp. 695 (D.Neb.1996) (granting downward departure because defendant was homosexual police officer). The circumstances present in Coleman's case may justify a downward departure as well. We, however, decline to determine ourselves whether the factors alleged by Coleman are present to such a degree as to warrant a downward departure in this case. We leave that to the district court, which as noted in Koon, is in the best position to determine whether the case is so unusual as to warrant a departure. See Koon, 518 U.S. at 98, 116 S.Ct. 2035 (noting that district court enjoys an "institutional advantage" over the appellate court in making such a determination). [FN5]

FN5. In a separate dissent, Judge Kennedy discusses U.S.S.G. § 5K2.12. However, that discussion misunderstands our position in this case. As an initial point, the reason that the district court may consider the government's investigative techniques as a basis for departure is not so that the court can "punish" the government, but so that the court can perform its duty as is required by Koon-i.e., determining whether such techniques take Coleman's case out of the "heartland" of crack-cocaine cases. Further, Judge Kennedy's concern that Coleman failed to establish "how the government's sting operation affected him," post at 363, is ill- founded, for the district court, in satisfying its responsibility under Koon, is perfectly free to conduct a hearing to determine whether Coleman can adduce additional evidence in support of his position.

Further, despite Judge Kennedy's statement to the contrary, § 5K2.12 has no relevance to this case considering that Coleman did not argue (and we do not suggest) that he committed the offense because he was facing "a threat of physical injury, substantial damage to property or similar injury resulting from the unlawful action of a third party or from a natural emergency" or due to "personal financial difficulties." See U.S.S.G. § 5K2.12. Indeed, Coleman has consistently argued that he was improperly targeted because of his race and parolee status, and thus, we have neither explicitly nor implicitly expressed a "concern" regarding possible coercion or duress issues.

III. Aggregation of Factors

[10] Coleman argued that several circumstances took his case out of the "heartland" of crack cocaine cases, and thus, justified a downward departure. [FN6] ***361** Coleman garners substantial support for his argument from Koon, and from decisions of other circuits as well. Indeed, the Sentencing Guidelines explicitly acknowledge that a combination or aggregation of factors could distinguish a case from the "heartland" of cases. U.S.S.G. § 5K2.0 comment. [FN7] As the Supreme Court noted, U.S.S.G. § 5K2.0 is designed to allow district courts to "consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensue." Koon, 518 U.S. at 113, 116 S.Ct. 2035. Further, Justice Stevens noted in his separate opinion in Koon that he did not "understand the opinion to foreclose the District Court from basing a downward departure on an aggregation of factors each of which might in itself be insufficient to justify a departure." Koon, 518 U.S. at 114, 116 S.Ct. 2035 (Stevens, J., concurring in part and dissenting in part).

FN6. In addition to challenging various aspects of Secrete's investigatory techniques, Coleman further raised a "sentencing entrapment" argument before the district court, namely that Secrete induced him to sell crack cocaine due to the higher penalties imposed for such offenses. We have not officially recognized a "sentencing entrapment" argument as a basis for downward departure. See, e.g., United States v. Jones, 102 F.3d 804, 809 (6th Cir.1996). However, in United States v. Mason, No. 96-5119, 1997 WL 560062, at *3 (6th Cir. Sept.5, 1997), the court noted that it "assumed, without deciding, that if the facts of a case demonstrate that the government manipulated or otherwise entrapped the defendant, for the purpose of increasing his sentence, the defendant may be entitled to relief." Id. (citing several unpublished cases); see also United States v. Brown, No. 95-6683, 1997 WL 159372, at *2 (6th Cir. Apr.3, 1997) (per curiam). Based on the facts of Coleman's case, we also see "no need to address the larger issue of whether this circuit should recognize sentencing entrapment as a valid basis for downward departure." See Brown, 1997 WL 159372, at *3.

FN7. The comment recognizes:

The possibility of an extraordinary case that, because of a combination of such characteristics or circumstances [not ordinarily relevant to a departure], differs significantly from the "heartland" cases

Copr. © West 2000 No Claim to Orig. U.S. Govt. Works

> covered by the guidelines in a way that is important to the statutory purposes of sentencing, even though none of the characteristics or circumstances individually distinguishes the case. However, the Commission believes that such cases will be extremely rare.
> U.S.S.G. § 5K2.0 Commentary.

In addition, the Tenth Circuit recently decided two cases addressing the issue of whether the aggregation of factors may warrant a downward departure under Koon. See United States v. Jones, 158 F.3d 492 (10th Cir.1998); United States v. Whitaker, 152 F.3d 1238 (10th Cir.1998). In Jones, the district court, relying on the comment to U.S.S.G. § 5K2.0, departed downward, finding that a combination of eleven factors warranted the departure. Jones, 158 F.3d at 496. On appeal, the government argued that each of the grounds relied upon by the district court was impermissible individually, and thus, even a combination of "wholly inadequate" factors could not justify a departure. Id. at 497. In affirming the district court's sentencing decision, the Tenth Circuit applied the four-prong analysis in Koon to determine whether the district court properly departed downward. After undertaking such an analysis, the court rejected the government's argument, finding that "[a] factor may be considered in the aggregate if it is 'atypical,' even though it may not be sufficient, in and of itself, to support a departure." Id. at 499; see also United States v. Collins, 122 F.3d 1297, 1308 (10th Cir.1997). Similarly, in Whitaker, the district court also erroneously concluded that it lacked the authority to depart downward based on circuit precedent. Whitaker, 152 F.3d at 1239-40. In Whitaker, the Tenth Circuit noted that because the district court did not correctly understand its authority to depart downward, the court of appeals had jurisdiction to review the lower court's decision. Id. at 1240; see also Landers, 39 F.3d 643 at 649. The Tenth Circuit again reiterated that only those factors explicitly prohibited by the Guidelines may never properly form the basis for a downward departure, but "[a]ll others potentially may provide a basis for departure under appropriate circumstances." Whitaker, 152 F.3d at 1240 (quoting Brock, 108 F.3d at 35). Finally, the court determined that the defendant's *362 "drug rehabilitation efforts" could possibly provide a basis for departure and remanded the case for the district court to decide. Id. at 1241. We find the Tenth Circuit's analysis in Jones and Whitaker persuasive. These two cases reiterate the proposition that we have stated earlier: the district court must follow the Supreme Court's guidance in Koon, and under the appropriate circumstances as determined by the district court, any non-prohibited factor may provide the basis for a downward departure. [FN8]

> FN8. This court and other circuits have also applied the reasoning that in light of Koon, the district court must at least consider a myriad of factors in deciding whether to depart downward. See, e.g., United States v. Crouse, 145 F.3d 786, 790 (6th Cir.1998)(civic involvement); United States v. Owens, 145 F.3d 923, 928 (7th Cir.1998)(active role in supporting family); United States v. Faulks, 143 F.3d 133, 138 (3d Cir.1998)(extraordinary acceptance of responsibility); Lipman, 133 F.3d at 730 (cultural assimilation).

Thus, we hold that pursuant to Koon, the district court is required to consider the particular factors of the case as a whole, and any combination thereof, in determining whether there were sufficient extraordinary factors to take Coleman's case out of the "heartland" of crack cocaine cases. Morever, in the event that a defendant brings a downward departure claim in an attempt to abuse the aggregation paradigm set forth herein, we believe that district courts are perfectly equipped to handle such situations by granting appropriate procedural relief. See, e.g., Sierra Club v. Morton, 405 U.S. 727, 758, 92 S.Ct. 1361, 31 L.Ed.2d 636 (1972) (Blackmun, J., dissenting) ("We need not fear that Pandora's box will be opened or that there will be no limit to the number of those who desire to participate in ... litigation. The courts will exercise appropriate restraints just as they have exercised them in the past."). Accordingly, we hold that the district court erred by failing to consider all of the particular circumstances of this case to determine whether the case was removed from the "heartland" of crack cocaine cases.

## IV.

For the reasons set forth above, we REVERSE and REMAND the district court's sentencing decision for reconsideration consistent with this opinion. We note that if the district court determines that there are no factors present to such an extraordinary degree as to warrant a departure, the sentence should not be disturbed.

KENNEDY, Circuit Judge, dissenting.

While I concur in Judge Norris' dissenting opinion, I

write separately because I believe there are other respects in which the Majority errs.

It seems to me that the Majority's concern regarding the targeting of parolees in this sting investigation is because of the duress and coercion resulting from the parolee's circumstances. If so, U.S.S.G. § 5K2.12, Coercion and Duress, which authorizes the judge to depart downward "[i]f defendant committed the offense because of serious coercion, blackmail, or duress under the circumstances not amounting to a complete defense ...", is applicable and controlling here. As a result, improper investigatory techniques would be factors considered in the Sentencing Guidelines and this case falls within the "heartland" under § 5K2.12. [FN1] See *363 Koon v. United States, 518 U.S. 81, 94, 116 S.Ct. 2035, 135 L.Ed.2d 392 (1996). A departure may or may not be warranted depending on the factual determinations, although the guideline specifically states that personal financial difficulties do not warrant a decrease in the sentence.

FN1. As the majority correctly notes, courts have used U.S.S.G. § 5K2.12 as a means for "downward departures in cases where the government has induced a defendant to commit a crime, but the defense of entrapment is not warranted." See United States v. McClelland, 72 F.3d 717, 724-25 (9th Cir.1995). Although Koon precludes courts from refusing to consider relevant factors other than those proscribed by the Sentencing Commission, the Koon decision does not necessarily alter the manner in which courts classify government misconduct as a type of coercion or duress under U.S.S.G. § 5K2.12. I thus agree with the Majority that improper investigatory techniques may warrant a downward departure, but I would add that this is true only if the defendant has demonstrated duress, coercion, or some additional factor that merits a removal from the "heartland" of § 5K2.12.

Further, in applying § 5K2.12, the effect of the coercive conduct and duress on the defendant is what is to be measured. See § 5K2.12 ("The extent of the decrease ordinarily should depend on the reasonableness of the defendant's actions and on the extent to which the conduct would have been less harmful under the circumstances as the defendant believed them to be."). [FN2] The Majority opinion, however, makes no reference to the effect of the government's conduct on the defendant, but instead seems to focus on what it is that the government is charged with doing. I do not believe that the guidelines permit a downward departure under § 5K2.12 or even § 5K2.0 simply to punish the government without a showing that the government misconduct affected the culpability of the defendant. See United States v. Montoya, 62 F.3d 1, 5 (1st Cir.1995) (stating that unlike sentencing manipulation, which focuses on government misconduct, "the guidelines, and by extension departures from the guidelines, are centrally concerned with a proper sentence for the defendant in light of his own conduct and his own criminal history"); United States v. Janis, 69 F.3d 914, 915 (8th Cir.1995) ("A district court cannot depart where the only purpose of the departure is to deter government misconduct."); United States v. Williams, 978 F.2d 1133, 1136 (9th Cir.1992) (holding that a downward departure is inappropriate when the only purpose of the departure is to deter government misconduct); but cf. United States v. Nolan-Cooper, 155 F.3d 221, 243 (3rd Cir.1998) (improper government investigatory conduct may remove case from the heartland and warrant a downward departure). Here, the defendant offered nothing as to how the government's sting operation affected him. [FN3] See United States v. Santoyo, 146 F.3d 519, 525-26 (7th Cir.1998) (holding that alleged government "cajoling," without any proof of a Due Process Clause violation or a claim of Defendant's lack of predisposition, did not remove case from "heartland."). It would be difficult to do so since he engaged in five drug transactions, the last two after a period of time spent in jail. Although Koon refers to mitigating factors, I do not see how government misconduct, unless it affected the defendant's conduct so that it lessens the seriousness of what he or she did, can be a mitigating factor. For these reasons and those stated by Judge Norris, I respectfully dissent.

FN2. In Koon, the Court required the departure factors to have an effect on the defendants. 513 U.S. at 94, 115 S.Ct. 537. The effect of the victim's conduct on the defendants' conduct was critical to the departures expressly provided by the guidelines. Id. at 101-05, 115 S.Ct. 537. It was the fact that the widespread publicity would make the defendants more likely to be targets of abuse in prison that justified the second approved departure. Id. at 112, 115 S.Ct. 537. It was the additional burden on the defendants of state and federal prosecutions for the same conduct that justified the final departure. Id. The Court sustained these three departures.

FN3. In some ways, the majority opinion seemingly refers to sentencing manipulation, which this Circuit has never adopted, see United States v. Jones, 102 F.3d 804, 809 (6th Cir.1996), or the outrageous

Copr. © West 2000 No Claim to Orig. U.S. Govt. Works

government conduct defense. See United States v. Sanchez, 138 F.3d 1410, 1413 (11th Cir.1998). Such claims, both variations on sentencing entrapment, focus on whether the government's conduct is so outrageous that it offends the due process requirement of fundamental fairness. In making this determination, the courts do not necessarily consider the effect of the misconduct on the defendant. See Sanchez, 138 F.3d at 1414.

ALAN E. NORRIS, Circuit Judge, dissenting.

Although the majority opinion omits the most objectionable portion of the original ***364** panel's opinion--the portion which occasioned my dissent and led to en banc review of this case--I remain of the view that the majority does not fairly assess the district judge's understanding of her authority and discretion to depart.

The majority concludes that the district court did not properly consider Coleman's request for a downward departure based upon the "investigative techniques:" employed by the ATF because it looked at the issue from a procedural, rather than a substantive, perspective. A review of the record leads me to a different conclusion. The district court initially observed that it thought the argument regarding the ATF's investigative techniques was "not a downward departure issue" but more properly a selective prosecution issue that should have been raised in a motion to dismiss. Coleman's attorney then reminded the court that he was not arguing selective prosecution but was instead asking for a downward departure:

[T]his is not a claim of selective prosecution, and the reason it was not brought by motion to dismiss indictment is we are not claiming this as a case of selective prosecution.... It's more of a case of selective law enforcement....

....

...The reason this is a grounds for departure is simply because this takes this case out of the heartland of your typical drug case. That is where perhaps there's someone who is actively involved in dealing narcotics and the government then investigates and catches him in the act. This is a case where Mr. Secretti was out soliciting for drug cases and firearm cases and, frankly, Your Honor, the departure section in the guidelines is not meant to be an all- inclusive section, and I think the courts that have been inclined to look at the various factors that have been listed by the Sentencing Commission in the original guidelines, but the [Guidelines also allow] that if there is a circumstance, mitigating circumstances of a kind that is not included in your normal case, your general case, that the Court can consider that for departure, and it's strictly a matter for discretion.

The district court then proceeded to consider the merits of that argument, which I note essentially tracks the reasoning set forth in the majority's opinion, before it concluded:

I understand that the guidelines make exceptions for exceptional circumstances but I think there, I think you need more to bring this into that realm than your assertion that Mr. Coleman was being solicited by Agent Secretti. In fact, you know the government's position is exactly the opposite, and there isn't enough to warrant having a hearing on it. I mean, all you've given me as an exhibit here is the business card, no affidavit, no-- nothing in terms of hard evidence of this, and even if you did, I still don't-- I still don't see it as an issue which would entitle this defendant to a departure, so motion denied.

It is apparent that the district court considered whether Coleman's assertion amounted to a proper basis for a downward departure but concluded that his claim was so lacking in merit that it deserved summary rejection. The court did not, as asserted by the majority, believe it "lacked the authority and discretion to depart downward." I fail to see how the district court's conclusion can be said to be the product of an abuse of discretion when one considers the Supreme Court's admonition that sentencing courts must "bear in mind the Commission's expectation that departures based upon grounds not mentioned in the Guidelines will be highly infrequent." Koon, 518 U.S. at 96, 116 S.Ct. 2035 (punctuation omitted).

Because I believe that the record reveals that the district court properly considered all of the permissible grounds for departure raised by defendant at sentencing, I respectfully dissent.

END OF DOCUMENT

Copr. © West 2000 No Claim to Orig. U.S. Govt. Works